BUTLER v WARDEN, MARQUETTE PRISON

BOLTON v WARDEN, MARQUETTE PRISON

LAWSON v WARDEN, MARQUETTE PRISON

BECK v WARDEN, MARQUETTE PRISON

Docket Nos. 47433, 47437, 47438, 49566. Submitted May 13, 1980, at Marquette.—Decided September 15, 1980.

Tyrone Butler, James Bolton, Terry Lawson, and Terry Beck, plaintiffs, are prisoners at Marquette State Prison. All four men had their good time forfeited by the warden for various acts, including throwing human waste, water and food at the prison guards. The plaintiffs sought writs of habeas corpus from the Marquette Circuit Court alleging that the defendant forfeited their respective good time without due process of law. The court, Edward A. Quinnell, J., ordered good time restored to all four plaintiffs on the grounds that the acts complained of did not constitute "serious acts of insubordination" within the meaning of the Michigan statute dealing with good time. Defendant appeals alleging that the lower court erred in holding that plaintiffs' acts were not "serious acts of insubordination". *Held:*

1. The acts of plaintiffs constituted serious acts of insubordination as that phrase has been interpreted by the courts in this state.

2. Operating a correctional facility is a demanding and oftentimes dangerous job, and the judiciary should grant the warden wide latitude in making determinations as to what is or is not a serious act of insubordination.

Reversed.

1. PRISONS AND PRISONERS — GOOD TIME — FORFEITURE GROUNDS.

Good time may be forfeited by special order of the warden only for a serious act of insubordination, attempt to escape or escape in the absence of properly promulgated rules delineating how

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 60 Am Jur 2d, Penal and Correctional Institutions § 64.
Withdrawal, forfeiture, modification, or denial of goodtime allowance to prisoner. 95 ALR2d 1265.
[3] 60 Am Jur 2d, Penal and Correctional Institutions § 4.

much good time shall be forfeited for one or more infractions of prison rules in any month.

2. PRISONS AND PRISONERS — GOOD TIME — FORFEITURE GROUNDS.

The Michigan prison code provision relating to forfeiture of good time which contains the language "serious acts of insubordination" is apparently designed to deter by punishing acts of misconduct that represent a threat to the security and order of the prison institution, and if the inmate's behavior does not constitute a "threat to institutional order" or does not constitute an "open defiance of authority" then it cannot be said to fall within the meaning of the statute (MCL 800.33 *et seq.;* MSA 28.1403 *et seq.).*

3. PRISONS AND PRISONERS — JUDICIARY — WARDENS.

Operating a correctional facility is a demanding and oftentimes dangerous job, and the judiciary should grant the warden wide latitude in making determinations as to what is or is not a serious act of insubordination.

Tyrone Butler, James Bolton, Terry Lawson, and Terry Beck, *in propria persona.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Mark I. Leach,* Assistant Attorney General, for defendant.

Before: MACKENZIE, P.J., and BRONSON and ALLEN, JJ.

ALLEN, J. Plaintiffs, prisoners at Marquette State Prison, sought writs of habeas corpus from the Marquette Circuit Court alleging that defendant warden had forfeited their respective good time without due process of law. Following hearings held August 8, 1979, the court ordered good time restored to all four plaintiffs on grounds that the acts complained of did not constitute "serious acts of insubordination" within the meaning of MCL 800.33; MSA 28.1403. Subsequently, plaintiff Beck committed four additional violations. Hearing on the additional violations was held Decem-

ber 20, 1979, following which the court ruled that the conduct did not amount to "serious acts of insubordination" and entered an order restoring Beck's forfeited good time. Because the legal issues raised in each of the four cases are virtually identical, the cases have been consolidated on appeal.

Defendant contends that the trial court erred in holding that plaintiffs' acts were not "serious acts of insubordination" as that term is used in § 33 of the Michigan prison code, MCL 800.33; MSA 28.1403. Section 33 authorizes two methods by which good time may be taken away:

"(5) The commission of corrections may, by rules promulgated pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, prescribe how much of the good time earned under the foregoing provisions a convict shall forfeit for 1 or more infractions of the prison rules in any month.

"(6) For a serious act of insubordination, attempt to escape, or escape, the warden may, by special order, take away any portion of the whole of the good time made by a convict up to the date of the offense."

Under this section good time may be taken away by order of the warden if the conduct complained of is an escape, an attempt to escape or a "serious act of insubordination". Other less serious misbehavior may result in the forfeiture of good time if it is in violation of rules promulgated in compliance with the Administrative Procedures Act. *Williams v Warden, Michigan Reformatory,* 88 Mich App 782; 279 NW2d 313 (1979). At the time the incidents hereinafter described took place in the instant appeal, rules had not been promulgated. Thus, all of the forfeitures ordered by the warden in the instant appeal are sustainable only if the

transgressions are serious acts of insubordination. In *Williams, supra,* 785, this Court interpreted § 33 as follows:

"The statute authorizes loss of good time by special order for *serious* acts of *insubordination.* We interpret this to mean that the offense must fulfill both criteria to be punishable under the statute. Thus an act which is unquestionably insubordinate, but which represents little, if any, threat to institutional order, may not result in forfeiture of good time by special order. By the same token, an infraction of the rules which, though serious, does not constitute the sort of open defiance of authority which is insubordination may not be summarily punished under this provision. To hold otherwise would lead to absurd results."

At the outset it is important to set forth the several acts for which accumulated good time was forfeited by order of the warden. Different acts occurring at different dates under different circumstances resulted in different forfeitures of good time, as summarized in footnote 1 hereunder.[1] When *Williams, supra,* was released in March 1979, Judges McDonald and Quinnell of the Marquette Circuit Court communicated with the Office of the Attorney General, Corrections Division, stat-

[1] Plaintiff Bolton: throwing urine on an officer on January 10, 1975, during a disturbance in block-5 west. February 2, 1975, nine months accumulated good time was forfeited.

Plaintiff Butler: *throwing a tray of food at an officer* April 3, 1975. For this offense 5 months, 15 days accumulated good time was forfeited. Urinating on an officer picking up supper trays April 19, 1975. For this offense 5 months and 15 days accumulated good time was forfeited.

Plaintiff Lawson: throwing a glass jar filled with water at an officer March 16, 1978. The jar broke and several pieces of glass struck the officer in the back. No injury resulted. Two months and five days accumulated good time forfeited. April 14, 1978, spitting on officer. Five days good time forfeited. April 16, 1978, throwing cup of urine on officer. Two days good time forfeited.

Plaintiff Beck: throwing urine on a guard June 20, 1979. Nine months good time forfeited.

ing that based upon *Williams,* they (the judges) felt that certain types of conduct for which good time had been forfeited did not comport with the *Williams* decision. Accordingly, the judges, *sua sponte,* ordered defendant Warden of Marquette Prison to show cause why good time, previously forfeited in certain cases, should not be restored. On August 8, 1979, hearings were held on a number of cases, including the cases of plaintiffs Butler, Bolton, Lawson and Beck. Following the hearing, Judge Quinnell stated he would issue orders restoring good time to all four plaintiffs.

On the night following the hearing August 8th, and the trial court's statement that good time would be restored to all four plaintiffs, disturbances broke out in F block with human excrement and urine being thrown en masse at officers when they stepped near certain cells. Plaintiff Beck was an active participant in the fracas. Over a period of three days four different officers were pelted with liquid and human waste by Beck.[2] For the several incidents, two years of accumulated good time was forfeited of which 18 months was for the stabbing incident and six months was for the several throwings of liquid and human waste. On October 8, plaintiff Beck filed a petition for a writ of habeas corpus. Hearing on the petition was held December 20, 1979 before Judge Quinnell who, after reviewing the incidents involved stated:

"We have been around the block three or four times

---

[2] August 10, 1979, throwing a cup of liquid on an officer who came to Beck's cell to pick up a food tray.

August 11, throwing a cup of liquid in officer's face at 12:45 a.m.

August 12, throwing a cup of feces and urine on officer who came to pick up food trays. Again on August 12, when an officer attempted to open Beck's cell which Beck had tied shut with a blanket, the officer was stabbed in the hands by a piece of plastic broken off the tray and was struck in the face with a cup of feces and urine.

now on the meaning of what is a serious act of insubordination, and I don't know that it would serve any particularly useful purpose to go through it again. I have previously held that the throwing of some liquid by a resident on a staff member at a time when the resident is locked in a cell and the staff member is outside the cell does not constitute a serious act of insubordination as that phrase has been interpreted in the statute. The conduct is reprehensible, it's not to be condoned. It ought to be punished. And as of right now, of course, it would be punished because the Department has seen fit to promulgate rules against it.

"For the sake of the record, I am in the process of writing an opinion in another case, *Leach against the Warden,* which addresses that topic once again. So, as to the throwing of urine incidents, the three incidents on August 10, 11 and 12th, I find that that, that the incidents happened, but that nevertheless they are not serious acts of insubordination, such as would justify the forfeiture of good time. So, the orders of forfeiture will be set aside as to those three incidents.

"And as to the incident of August 12, 1979, in which the guard was, received minor cuts on his hands and arms by being scratched with the piece of plastic; that, it seems to me is getting a little bit closer to what the Legislature had in mind when they said a serious act of insubordination, because if we actually have some physical altercation and some physical harm being done to a staff member by means of cuts or scratches, even though they may be relatively minor, that, it would seem to me is more consistent with what the Legislature had in mind when they said serious acts of insubordination. So, as to that one incident, I find that it is a serious act of insubordination and the conviction will not be set aside as to that incident."

Pursuant to the trial court's statement, an order was entered January 24, 1980, restoring to plaintiff Beck six months of good time previously forfeited for misconduct acts occurring on August 10, 11 and 12, 1979. From this order and the orders of

restoration entered September 6, 1979, defendant appeals of right.

Defendant does not contest the lack of properly promulgated rules which, under MCL 800.33(5); MSA 28.1403(5), would permit the forfeiture of good time credits, had the rules proscribed the behavior engaged in by the instant plaintiffs.[3] Rather, defendant argues that the act of throwing urine or human waste is, in itself, so offensive that every such act, no matter how isolated or under what circumstances, is "a serious act of insubordination" as that phrase is used in MCL 800.33(6); MSA 28.1403(6). Absent further guidance from the Supreme Court on the issue, we are inclined to agree with the defendant.

In the absence of properly promulgated rules delineating how much good time shall be forfeited for one or more infractions of prison rules in any month, good time may be forfeited by special order of the warden only for a serious act of insubordination, attempt to escape or escape. *Williams, supra,* 785. The behavior of plaintiffs in this case was clearly not escapes or attempts to escape. *In re Evans,* 352 Mich 185; 89 NW2d 535 (1958). However, we believe that their misconduct constituted serious acts of insubordination as that phrase has been interpreted by the courts in this state.

In *Robinson v Gries,* 277 Mich 15; 268 NW 794 (1936), plaintiff inmate brought a habeas corpus action challenging the forfeiture of his earned "good time" as a result of an assault on a parole officer while plaintiff was being taken into custody for violating his parole and as a result of six

---

[3] The Department of Corrections had attempted to issue rules but in so doing had issued them as guidelines and consequently, properly promulgated rules were not in existence. *Williams, supra,* 785.

alleged violations of prison rules after his return to the state prison at Marquette. The plaintiff's principal claim was that "forfeiture of his good time earned was unwarranted by statute or rule". *Id.,* 18. Relying on the forerunner of the instant statute, under which forfeiture is claimed by the defendant, the Supreme Court ruled:

"We need not consider the rules adopted by the commissioner of pardons and paroles * * * as the statute provided that: 'for any serious act of insubordination, attempt to escape, or escape, the commissioner of pardons and paroles may, by special order, take away any portion or the whole of the good time made by any convict up to the date of such offense.'

"Without doubt, plaintiff, assault of a parole officer would justify the commissioner in holding him guilty of a serious act of insubordination and invest him with the discretion to cancel the good time to the time of such assault." *Robinson, supra,* 18.

In *Heyman v Kropp,* 24 Mich App 231; 180 NW2d 47 (1970), *lv den* 383 Mich 816 (1970), plaintiff inmate sought a writ of mandamus ordering the prison warden to restore him the "good time" deemed forfeited as a result of his knifing assault on a fellow inmate in the State Prison of Southern Michigan. One of plaintiff's claims was that since his assault conviction was subsequently set aside by the United States District Court, he could not be penalized for his actions by forfeiture of his statutory good time. Rejecting this claim, this Court held:

"Nothing appears on this record to indicate that the setting aside of defendant's April 5, 1962 conviction by the Federal district court occurred because defendant did not stab Springette. [the fellow inmate]. The record does indicate that that stabbing occurred. This is suffi-

cient to sustain disciplinary action in the form of forfeiture of good time. CLS 1961, § 800.33 (Stat Ann 1954 Rev § 28.1403)." *Heyman, supra,* 234.

In *Williams, supra,* the plaintiff inmate brought a mandamus action to compel the defendant warden to restore his good time, previously forfeited by the defendant as a result of the plaintiff's two assaults on another inmate. Properly recognizing that the forfeiture would only be valid if the plaintiff's actions constituted a "serious act of insubordination" (because of lack of prison rules), a panel of this Court held that "[t]he statute authorizes loss of good time by special order only for *serious* acts of *insubordination".*[4] In reaching this conclusion, the Court in *Williams* failed to consider the holdings in *Robinson, supra,* and *Heyman, supra.* In both of these cases, the courts considering the question held that an assault on a parole officer while outside the prison confines, or an assault on a fellow inmate while within the prison structure, respectively constituted a "serious act of insubordination" within the meaning of the statute under review. Yet, in *Williams,* a panel of this Court held that a double assault on a fellow inmate did not fall within the meaning of the statutory language.

We need not reconcile the apparently inconsistent holdings of this Court in *Williams* and *Heyman.* In passing, we observe that the rationale offered by the Court in *Williams* is, in part, the more persuasive of the two decisions. Specifically, the statutory language relating to a "serious act of insubordination" is apparently designed to deter, by punishing, acts of misconduct which are so flagrant that they represent a threat to the secu-

---

[4] 88 Mich App 782, 785. See *supra,* for the full statement by the Court.

rity and order of the prison institution. If the inmate's behavior does not constitute a "threat to institutional order" *or* does not constitute an "open defiance of authority" then it cannot be said to fall within the meaning of the statute. Compare *Williams, supra.* While it might be argued that an assault on a fellow inmate constitutes a threat to institutional order, *Heyman, supra,* it would seem that this type of decision is best left to the sound discretion of the prison official charged by statute to deal with the problem by "special order". *Pfefferle v Corrections Comm,* 86 Mich App 366, 372; 272 NW2d 563 (1976), 72 CJS, Prisons, § 21h(1), pp 890-891, see *McDonnell v Wolff,* 342 F Supp 616, 628 (D Neb, 1972), *modified* 483 F2d 1059 (CA 8, 1973), *aff'd* 418 US 539, 544-546, fn 2, 5; 94 S Ct 2963; 41 L Ed 2d 935 (1974).

There can be no question in the instant case that the acts committed by the plaintiffs were insubordinate. Pelting corrections officers with human waste, in addition to the other assaults which were found to have been committed by the plaintiffs, clearly is intended at least in part as an open defiance of authority. Such acts also constitute a threat to institutional order, and as a result are "serious". The record in this case amply demonstrates the understandable effect that such acts have on the corrections officers charged with maintaining order in the prison. Institutional order is not secured simply because a prisoner remains locked in a cell when committing an assault of the type in question on an officer. An assault of such type is not merely a defiance of authority, as might be a passive refusal to obey an order. Rather it is an affirmative act by which the inmate actually and dramatically interrupts the order which prison officials are charged with preserving.

The warden is in a far better position to ascertain whether an act constitutes a threat to the institutional order of a prison than are the courts, and the judiciary should not interfere with the warden's exercise of discretion unless that discretion has been clearly abused. Operating a correctional facility is a demanding and ofttimes dangerous job, and the judiciary should grant the warden wide latitude in making determinations as to what is or is not a "serious" act of insubordination. We are convinced that the warden did not overstep these bounds in the instant case.

Reversed.[5]

---

[5] Because of the public importance of the question raised herein, we have intentionally disregarded the defendant's claim that review should have been brought by way of mandamus rather than by writ of habeas corpus.